# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ECKERD CORPORATION, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 13-4752 |
| RHOADS AVENUE NEWTOWN SQUARE, LP, ET AL., | : | |
| Defendants. | : | |
| PARKE BANK, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 14-5293 |
| MARC B. KAPLIN and GEORGE J. SPAEDER, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                          **August 1, 2018**

Currently at issue in this ongoing, multi-party litigation is whether a nonparty to a proposed settlement agreement has standing to object to that settlement.

The cases before me involve a series of complex real estate and banking transactions pertaining to certain real property located on Rhoads Avenue in Newtown Square, Pennsylvania, and to disputes regarding various loans, mortgages, and subleases. Several parties in these related actions—Parke Bank, Shelbourne NSQ Associates, Marc B. Kaplin as Trustee for the Kaplin Stewart Meloff Reiter & Stein 401k Plan, and Mark B. Kaplin individually (collectively the "Settling Parties")—have reached a resolution regarding a substantial number of the remaining claims (the "Settlement Agreement"). The Settling Parties have sought approval of

1

this agreement through a Motion to Enforce the Settlement. As will be explained in detail below, George Spaeder—a former limited partner in Rhoads Avenue Newtown Square, LP ("Rhoads LP") which is the entity at the center of the dispute—claims he has standing to object to this settlement and, in fact, has lodged such an exception.

After the Motion to Enforce Settlement was filed, I held a hearing wherein the Settling Parties maintained that Spaeder does not have standing to object to the Settlement Agreement, either individually or on behalf of Rhoads LP. Spaeder disagrees and urges that certain proceedings currently pending in state court could impact the proposed settlement and provide him with standing to object.

I directed the parties to file supplemental briefs addressing (a) the current status of the state court proceedings, (b) how the outcome of those proceedings could affect Spaeder's standing to lodge objections to the proposed Settlement Agreement, and (c) the basis on which Spaeder, who no longer legally controls Rhoads LP, claims entitlement to object to the proposed Settlement Agreement on behalf of Rhoads LP. I received Spaeder's brief on February 16, 2018, and the Settling Parties' brief on March 1, 2018. Upon review of these submissions and for the following reasons, I find that Spaeder has no standing to object to the proposed settlement in the above-captioned matters.

## I. FACTUAL BACKGROUND

To fully understand this matter, and Spaeder's lack of standing, a series of somewhat complex business transactions involving multiple parties must first be explained. The following background and facts are taken from complaints in the pertinent federal and state court actions, submissions by the parties on these dockets, and, in the matter before me, the parties' supplemental briefs and the exhibits attached to the parties' various filings.

### A. The Property

Janet A. Kirk, Timothy Barnard, as Executor of the Estate of Jeanne K. Criddle, and Amy Sands (collectively, "Fee Owner") own certain real property located on Rhoads Avenue in Newtown Square, Pennsylvania (the "Property"). Limited partnership Rhoads LP is a tenant of the Property under a ground lease dated May 1, 2009 ("Ground Lease"). Eckerd Corporation is the subtenant of Rhoads LP under a lease agreement dated May 25, 2012 ("Eckerd Lease"). Entitlement to the Eckerd Lease payments has been one of the primary areas of dispute in this case.

### B. The Shea Loan

On October 23, 2008, Parke Bank—a full-service commercial bank—made a loan to an individual named John Shea under a Commercial Line of Credit Note in the principal amount of five million dollars (the "Shea Loan"). On October 25, 2011, Rhoads LP executed an agreement guaranteeing payment of the Shea Loan ("Rhoads-Shea Guaranty"). To secure all current and future obligations of Rhoads LP to Parke Bank, Rhoads LP also: (1) executed and delivered to Parke Bank a leasehold mortgage wherein Rhoads LP mortgaged to Parke Bank its leasehold interest in the Rhoads Grounds Lease ("Leasehold Mortgage"); and (2) granted Parke Bank an assignment of leases, rents, and other agreements on the Property, with all rents, income, royalties, and profits when becoming due ("Assignment of Rents") (see subtenant agreement with Eckerd referenced above).

Shea subsequently defaulted on his obligations to Parke Bank under the Shea Loan and, on July 11, 2012, Parke Bank issued a notice to Eckerd, as tenant under the Eckerd lease, demanding that Eckerd remit its lease payments to Parke. Thereafter, on August 24, 2012, Parke Bank obtained a judgment against Rhoads LP, as Shea's guarantor, in the amount of

3

$1,310,590.63 plus continuing interest, in the Court of Common Pleas of Delaware County, Pennsylvania (the "Rhoads-Shea Judgment").

### C. The Other Creditors of Rhoads LP

Several other entities hold judgments against Rhoads LP. On December 22, 2011, Rhoads LP, through its general partner Rhoads GP—which was controlled by George Spaeder and Bruce Earle at the time—entered into a Loan and Security Agreement with a limited partnership known as Shelbourne NSQ Associates LP ("Shelbourne"). Via this Agreement, Shelbourne loaned Rhoads LP $850,000 and, as security, Rhoads LP granted Shelbourne an interest in all of Rhoads LP's "presently owned and hereafter acquired personal property." As detailed *infra*, the Loan and Security Agreement also granted Shelbourne the right to exercise control over Rhoads LP in the event of a default. On August 28, 2012, following a default on the loan by Rhoads LP, the Delaware County Court of Common Pleas entered a judgment against Rhoads LP in favor of Shelbourne for $1,056,328.56 (the "Shelbourne Judgment").

In September 2011, Rhoads LP also received a loan from Mark Kaplin, as the Trustee for the Kaplin Stewart Meloff Reiter & Stein 401k Plan (the "Kaplin Plan"). Rhoads LP defaulted on this loan as well and the Chester County Court of Common Pleas entered a judgment against it, on August 31, 2012, in the amount of $225,420.72 plus continuing interest (the "Kaplin Plan Judgment").

### D. The Federal Court Actions

On July 11, 2012, attorneys for Parke Bank, having already obtained a judgment against Rhoads LP in Delaware County, forwarded the Assignment of Rents document to Eckerd demanding that all rental payments under the Eckerd Lease be made to Parke Bank. Rhoads LP disputed Parke Bank's authority to direct Eckerd to remit rent payments under the Eckerd Lease

to Parke Bank and, instead, directed that those rent payments continue to be remitted to Rhoads LP. Shelbourne and the Kaplin Plan, as judgment creditors of Rhoads LP, similarly disputed Parke Bank's authority to direct Eckerd to remit rent payments under the Eckerd Lease to Parke Bank.

Given the disagreement over the proper recipient of rent payments, Eckerd filed an interpleader action against the Fee Owner, Rhoads LP, Shelbourne, the Kaplin Plan, Kaplin individually, and Parke Bank (Civil Action No. 13-4752), seeking an order directing the appropriate disposition of its future rental payments (the "Interpleader Action"). Parke Bank then commenced a separate action against Kaplin and Spaeder (Civil Action No. 14-5293), alleging fraud, civil conspiracy, and tortious interference claims in connection with Kaplin and Spaeder's alleged interference in Parke Bank's receipt of rents from Eckerd (the "Kaplin-Spaeder Litigation").

Subsequently, on June 19, 2015, Spaeder, Rhoads LP, Shea, and five other limited partnerships controlled by Spaeder and Bruce Earle filed a third suit against Defendant Parke Bank and two of its employees, alleging violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C §§ 1961, et seq. in connection with a series of substantial commercial loans and related transactions. In addition to three RICO claims, the plaintiffs in that matter also asserted state law claims for fraud, conversion and civil conspiracy. Devon Drive Lionville LP, et al. v. Parke Bankcorp, Inc., et al. (Civil Action No. 15-3435) ("Devon Drive Action").[1]

On May 1, 2015, a number of entities that were affiliates of Rhoads LP entered into an agreement (the "Resolution of Authority") to facilitate negotiations with Parke Bank. The Resolution designated George Spaeder with settlement authority, stating:

---

[1] As of July 26, 2018, the Devon Drive action was dismissed with prejudice.

5

> The below signed Limited Partners [of Rhoads Avenue Newtown Square, LP] hereby authorize George Spaeder to negotiate a resolution of all claims on behalf of the Rhoads Avenue Newtown Square, LP, against Parke Bancorp, Inc., Parke Bank, Vito Pantilione, and Ralph Gallo. Before a resolution of the claims on behalf of the Rhoads Avenue Newtown Square, LP, is entered into, however, all the terms and conditions of such resolution must be reviewed and unanimously approved by the following Limited Partners: [George Spaeder, Limited Partner; Amy Spaeder, Limited Partner; Joseph Fox for Shelbourne NSQ Associates, LP, Limited Partner].

(Spaeder Supp. Memo, Civ. A. No. 13-4752, ECF No. 255, Ex. 9.)

### E. Shelbourne's Notice Exercise of Rights of Secured Party

On June 14, 2017, Shelbourne sent Spaeder and Earle a Notice of Exercise of Rights of Secured Party under the Loan and Security Agreement made December 22, 2011. This Notice stated:

> You have been previously notified that numerous Defaults and Events of Default exist under the Loan Documents and the Lender declared the Loan immediately due and payable. As a result, the Lender is entitled to exercise and <u>does hereby exercise</u> any and all default-related rights and remedies under the Loan Documents and/or applicable law, including, but not limited to the following rights and remedies:
>
> - <u>Exercise of Ownership and Voting Control</u>. Pursuant to Section 9(b) of the GP Pledge Agreement and Section 9(b) of the LP Pledge Agreement, Lender asserts its rights to exercise and now does exercise voting control over the Security Collateral and Pledged Collateral. Thus, 100% of the pledged GP interests and 100% of the pledged LP interests are now owned by and controlled by Lender. You are no longer entitled to exercise any rights attendant to the ownership or voting of those interests and/or shares.
>
> - <u>Exercise of Rights to Dividends and/or Distributions</u>. Pursuant to Section 9(b) of the GP Pledge Agreement and Section 9(b) of the LP Pledge Agreement; Lender exercises and asserts its rights to receive all dividends and distributions of any kind whatsoever from any of Rhoads Avenue Newtown Square, LP, and/or Rhoads Avenue Newtown Square GP, LLC and directs

- Possession of Collateral. We hereby assert our rights (A) under Section 9-609(a) of the UCC to take possession of the Collateral and (B) under the GP Pledge Agreement, LP Pledge Agreement to immediately exercise all rights of the GP and LP with regard to any premises owned or leased by Borrower.

- Requirement to Assemble Collateral. We hereby direct you, pursuant to the Loan and Security Documents and Section 9-609(c) of the UCC, to immediately assemble all of the Collateral and make it available to us at the premises of the Borrower and/or Guarantor(s) and/or Pledgor(s) where such Collateral is customarily located in the ordinary course of such party's business.

(Kaplin-Shelbourne Supp. Memo, Civ. A. No. 13-4752, ECF No. 256, Ex. A.)

Shelbourne forwarded this Notice, along with a letter to Kevin Berry, counsel for Rhoads LP, stating:

> The Partnership hereby relieves you, your co-counsel and your law firm of your duties as counsel to the Partnership generally, and specifically as counsel in the matters captioned Eckerd Corporation v. Rhoads Avenue Newtown Square, LP, et al., United States District Court for the Eastern District of Pennsylvania, Civil Action No. 13-CV-4752 (the "Interpleader Action"), Devon Drive Lionville, LP v. Parke Bancorp, Inc., et al., United States District Court for the Eastern District of Pennsylvania, Civil Action No. 2:15-cv-03435 (the "Devon Drive Action"), Kunda v. Parke Bank, et al., United States District Court for the Eastern District of Pennsylvania, Civil Action No. 2:15-cv-05479 (the "Kunda Action") and any other action in which you have entered an appearance on behalf of the Partnership (collectively, the "Actions") for all purposes, including with respect to all cross- and counterclaims filed therein by or on behalf of the Partnership.

(Kaplin-Shelbourne Reply Memo, Civ. A. No. 13-4752, ECF No. 247, Ex. 1.)

In connection with its exercise of rights, Shelbourne sent a letter to Spaeder revoking the Resolution of Authority:

> Reference is made to that certain Resolution dated May 1, 2015 and executed by Shelbourne NSQ Associates, LP ("Shelbourne LP") and the other limited partners of Rhoads Avenue Newtown Square, LP, a copy of which is included herewith for your reference (the "Resolution")
>
> Please be advised that Shelbourne hereby fully and finally revokes any and all authority you may have under and with respect to the Resolution. Such revocation is effective immediately as of the date of this letter.

(Kaplin-Shelbourne Supp. Memo, Civ. A. No. 13-4752, ECF No. 256, Ex. F.)

F. **The Settlement Agreement At Issue**

Parke Bank, Shelbourne, Kaplin, and the Kaplin Plan (the "Settling Parties") reached a proposed settlement agreement to resolve most of the claims in the Interpleader Action and the Kaplin-Spaeder Litigation (the "Settlement Agreement").[2] This Settlement Agreement provides, *inter alia*, that Shelbourne, the Kaplin Plan, and Kaplin will form a new entity, known as Shelbourne-Kaplin, LLC (the "Rent Payee"). The Rent Payee will then acquire a portion of the Rhoads-Shea Judgment held by Parke Bank, together with certain collateral security pledged by Rhoads Avenue to Parke Bank to secure the Rhoads-Shea Judgment including, but not limited to, the Assignment of Rents and Leases executed by Rhoads LP in favor of Parke Bank. After execution of the Settlement Agreement, the Rent Payee will receive the funds currently maintained in the Court's registry and any future monthly rental payments made by Eckerd. In turn, the Rent Payee will, on a monthly basis, pay the monthly rent and other sums due the Fee Owner under the Ground Lease. For its part, Parke Bank will relinquish its entitlement to such monies in exchange for the Rent Payee's acquisition of a portion of the Rhoads-Shea Judgment.

---

[2] Parke Bank's third-party complaint against Bruce Earle in the Interpleader Action and Parke Bank's claim against Spaeder in the Kaplin-Shelbourne Litigation are not part of the proposed Settlement Agreement.

The Rent Payee will pay Parke Bank for its partial assignment of the Rhoads-Shea Judgment and all claims and defenses by and among the parties would be dismissed with prejudice.

In order to advance this Settlement Agreement, Shelbourne—now in control of Rhoads LP—served a Notice of Public Sale of Collateral under the Uniform Commercial Code, providing that it was going to sell "all right, title, and interest" of Rhoads LP. At the private UCC sale (the "Foreclosure Sale"), on June 26, 2017, Shelbourne sold all of the assets of Rhoads LP to the new entity Shelbourne-Kaplin, LLC.

On June 5, 2017, the Settling Parties filed the joint motion to approve the settlement agreement, which is currently at issue. Rhoads LP and George Spaeder opposed the motion. Following oral argument, I denied the motion without prejudice so that the filing parties could engage in additional negotiations.

On September 7, 2017, the Settling Parties renewed their motion to approve settlement, which was again opposed by Rhoads LP and George Spaeder. Eckerd also opposed the Motion because it did not believe that its claims and rights were adequately protected. At a second hearing on January 17, 2018, the parties represented that the primary roadblock to settlement was an ongoing dispute between the Settling Parties and George Spaeder regarding the ownership and control of Rhoads LP. The Settling Parties contended that Spaeder lacked standing to object to the proposed settlement on behalf of Rhoads LP.

All of the parties also advised that state litigation between Spaeder, Kaplin, Shelbourne, and several others was ongoing in the Court of Common Pleas for Delaware County. The parties disagreed, however, as to whether resolution of the state court proceedings in favor of the state court plaintiffs, including George Spaeder, could impact the ability of the Settling Parties to enter

into the proposed Settlement Agreement on behalf of Rhoads LP. The necessary facts regarding the state court case are set forth below.

### G. The Pending State Court Action

On July 26, 2017, George Spaeder and several others filed an action in the Pennsylvania Court of Common Pleas for Delaware County. <u>Spaeder, et al. v. Marc B. Kaplin and Shelbourne NSQ Associates, LP</u>, No. 2017-6577 (Pa. Ct. Comm. Pl.) (the "State Court Action"). In that case, plaintiffs set forth seven counts against Kaplin and Shelbourne. Count I sought a declaration of the rights, duties, and obligations arising under two documents: (a) the Resolution of Authority, discussed above, wherein all of the necessary parties authorized George Spaeder to negotiate a resolution of all claims on behalf of the parties against Parke Bancorp, Inc., Parke Bank, Vito Pantilione, and Ralph Gallo; and (b) a Contribution Agreement of October 8, 2012, drafted by Kaplin and signed by, *inter alia*, a Timothy Kunda, Kaplin, and Shelbourne, which provided that the parties could contribute funds towards the payment of the minimum rent owed to the Fee Owner until Rhoads LP began receiving rents under the Eckerd Lease. The remaining counts included: breach of contract arising from attempts by Shelbourne and Kaplin to disregard the express terms of the Resolution of Authority (Count II); recovery for breach of fiduciary duty by Kaplin and Shelbourne as partners in Rhoads LP (Counts III and V); breach of fiduciary duty claim against Kaplin as counsel to Spaeder (Count IV); fraud by Shelbourne and Kaplin (Count VI); and civil conspiracy (Count VII).

## II. DISCUSSION – WHETHER EITHER SPAEDER OR RHOADS, LP HAS STANDING TO OBJECT TO THE PROPOSED SETTLEMENT

The primary question before me is whether Spaeder maintains a legal interest in Rhoads LP such that he has standing to contest the Settlement Agreement on behalf of Rhoads LP. Spaeder premises his standing on several grounds. First, he argues that the yet-unresolved State

Court Action invalidates the Rhoads, LP Foreclosure Sale. Second, he maintains that the State Court Action's unresolved claims of breach of fiduciary duty by Shelbourne and Kaplin nullify any ownership rights Shelbourne claims over Rhoads LP. Third, Spaeder asserts that the Resolution of Authority remains effective and precludes Shelbourne from settling on behalf of Rhoads LP without the express consent of all the other signatories to the Resolution. Fourth, he contends that the Resolution of Authority "effectively modified" the Shelbourne loan documents. And finally, he urges that the Colorado River abstention doctrine requires that I refrain from deciding this matter during the pendency of the State Court Action. I address each contention individually.

### A. Whether the State Court Action Could Invalidate the Rhoads LP Foreclosure Sale

Spaeder first contends that the State Court Action pending in Delaware County directly impacts the standing question because he and the other state court plaintiffs challenge the validity of the Foreclosure Sale on Rhoads LP. That State Court Action alleges that the Foreclosure Sale of Rhoads LP must be set aside as violative of the UCC and Pennsylvania Uniform Fraudulent Transfer Act.[3] According to Spaeder, a finding in his favor would serve to negate the authority of Shelbourne or Kaplin to consummate the proposed Settlement Agreement with Parke Bank.

---

[3] Specifically, the complaint alleges that: (a) the UCC expressly exempts interests in land and leaseholds from its coverage, 13 Pa.C.S. § 9104(J); (b) the sale was not commercially reasonable, 13 Pa.C.S. § 9610; (c) Defendant Shelbourne's filing lapsed in February of 2017, 13 Pa.C.S. § 9515(c); (d) the purported transfer, from Rhoads to Shelbourne to Shelbourne-Kaplin LLC is a violation of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. §§ 5101, et seq., as the transfer was made by these defendants with the "actual intent to hinder, delay or defraud" creditors of Rhoads; and (e) the purported UCC sale conducted by Shelbourne violated the requirements of 13 Pa.C.S. § 9610, as no aspect of the purported self-help sale of Rhoads's assets was "commercially reasonable" and the sale violated the fiduciary duties of the Defendants. (Spaeder Supp. Memo, Civ. A. No. 13-4752, ECF No. 255, Ex. 2 ¶¶ 133–39, 157–59.)

Spaeder's argument fails for one simple reason—the State Court Action does not attack the validity of either (a) the December 22, 2011 Loan and Security Agreement between Rhoads LP and Shelbourne, which in the event of a default, permitted transfer of ownership and voting control to Shelbourne; or (b) the June 14, 2017 Notice of Exercise of Rights of Secured Party under the Loan and Security Agreement. Importantly, Spaeder does not dispute that his then-partner Earle signed the Loan and Security Agreement on behalf of Rhoads LP, that Rhoads LP defaulted on its loan to Shelbourne, and that the Loan and Security Agreement provided Shelbourne the legal authority to take ownership of Rhoads. (State Court Action Compl. ¶¶ 17, 20, 128.) In fact, the State Court Action does not contend that Shelbourne's exercise of its rights under the Loan and Security Agreement was invalid. Rather, the allegations cited by Spaeder challenge the validity of the UCC sale of Rhoads LP's assets from Shelbourne to Shebourne-Kaplin, LLC. Even assuming that Spaeder could properly raise and succeed on this argument, the sole outcome would be the invalidation of that sale, which would still leave Shelbourne as the sole owner of Rhoads LP. Nothing alleged in the state court complaint would restore ownership and/or control in Rhoads LP to Spaeder or otherwise overcome the Notice of Exercise of Rights.

> **B.** **Whether the State Court Action's Claims of Breach of Fiduciary Duty by Shelbourne and Kaplin Nullify Any Ownership Rights Shelbourne Has Over Rhoads LP**

Alternatively, Spaeder argues that he has asserted claims of breach of fiduciary duty against both Shelbourne and Kaplin based on each of their memberships in Rhoads LP. He alleges, with little additional explanation, that "limited partners have a fiduciary duty to the limited partnership itself as well as to the other limited partners." (Spaeder Supp. Memo., Civ. A. No. 13-4752, ECF No. 255 at p. 8.) Because Shelbourne and Kaplin have engaged in

"egregious breaches of the duties of good faith and fair dealing both as to their co-partners and as to the creditors of Rhoads," Spaeder reasons that these breaches would somehow re-vest him with ownership in Rhoads LP.

Again, however, these claims, if successful, could only impose individual liability on Shelbourne and Kaplin and result in monetary damages. They would not invalidate the Loan and Security Agreement and Shelbourne's exercise of its rights thereunder.

### C. Whether the Resolution of Authority Precludes the Settlement

Spaeder next contends that the May 1, 2015 Resolution of Authority precludes any settlement of the Interpleader Action absent his express consent. As noted above, on May 1, 2015, during the pendency of the Interpleader Action, the Kaplin-Spaeder Litigation, and the Devon Drive Action, the limited partners of Rhoads LP, which included Spaeder, entered into an agreement to facilitate negotiations with Parke Bank to resolve a number of disputes. That Resolution stated, in pertinent part, that the Rhoads LP limited partners authorized Spaeder "to negotiate a resolution of all claims on behalf of the Rhoads Avenue Newtown Square, LP against Parke Bancorp, Inc. Parke Bank, Vito Pantilione, and Ralph Gallo." (Spaeder Supp. Memo, Civ. A. No. 13-4752, ECF No. 255, Ex. 9.) Spaeder asserts that because he does not consent to the Settlement Agreement, as required by the Resolution of Authority, the Settling Parties lack the authority to enter into the proposed settlement agreement on behalf of Rhoades LP.

Spaeder's argument is meritless for two reasons. First, the plain language of the Resolution of Authority states that it gives Spaeder authority to negotiate a resolution of all claims *on behalf of* the Rhoads Avenue Newtown Square, LP, *against Parke Bancorp, Inc., Parke Bank, Vito Pantilione, and Ralph Gallo*. Although the Devon Drive Action, the Kaplin-Spaeder Action, and the Interpleader Action were pending at the time this Resolution of

13

Authority was signed, only the Devon Drive Action involves claims by Rhoads LP *against* Parke Bank and its employees. Neither the Interpleader Action nor the Kaplin-Spaeder Litigation contain any claims by Rhoads LP or Spaeder against Parke Bank. Accordingly, the Resolution did not require approval from Spaeder for settlement of either the Interpleader Action or the Kaplin-Spaeder Litigation.

More importantly, the Resolution of Authority was validly revoked. The Resolution required any settlement of claims to be approved by George and Amy Spaeder and Joseph Fox, as limited partners. Following the December 22, 2011 Notice of Exercise of Rights—an issue not challenged in the State Court Action—Shelbourne obtained full control and authority over Rhoades LP, meaning that the Spaeders and Fox were no longer limited partners of Rhoades LP. Thereafter, Shelbourne—the controlling authority over Rhoads LP—explicitly revoked the Resolution of Authority, divesting Spaeder of his authority to settle matters with Parke Bank. Under agency principles, "[t]he principal has power to revoke and the agent has power to renounce" regardless of whether doing so would be in violation of a contract between the parties or whether the authority is expressed to be irrevocable. Govt. Guarantee Fund of Republic of Finland v. Hyatt Corp., 95 F.3d 291, 300 (3d Cir. 1996) (quoting Rest (2d) Agency § 118 (1958)).

Therefore, the revoked Resolution of Authority has no bearing on Spaeder's standing to object, on behalf of Rhoads LP, to the proposed settlement in the Interpleader Action and the Kaplin-Spaeder Litigation.

### D. Whether the Resolution of Authority "Effectively Modified" the Shelbourne Loan Documents

Spaeder's fourth argument contends that the Resolution of Authority was a bargained-for exchange and was supported by legally sufficient consideration "in that in exchange for such

14

authority, George Spaeder agreed to manage and oversee the properties, pay for the preparation of tax returns, distribution K-1s and pay all incidental expenses." (Spaeder Supp. Memo., Civ. A. No. 13-4752, ECF No. 255 at pp. 6–7.) Again, with little additional explanation, Spaeder reasons that the contractual Resolution of Authority "effectively modified" the earlier-executed Shelbourne loan documents.

This confusing argument fails on several levels. First, Spaeder incorrectly assumes that the Resolution of Authority constituted a contract. For a contract to exist, there must be an offer, acceptance, and consideration, the absence of any one of which precludes the finding of a contract. Jenkins v. Cnty. of Schuylkill, 658 A.2d 380, 383 (Pa. Super. Ct. 1995). Spaeder has identified no exchange of consideration that would elevate the Resolution of Authority from an agency agreement to a legally binding contract. Indeed, the plain language of the document does not support Spaeder's argument that he agreed to "manage and oversee the properties" as consideration for the Resolution of Authority. Rather the subsequently-revoked Resolution of Authority speaks only to Spaeder's authorization to negotiate a settlement of claims by Rhoads LP against Parke Bank.

Even if the Resolution of Authority could be deemed a contract, nothing in that document modifies the unrelated Loan Agreement between Rhoads LP and Shelbourne. The Resolution of Authority was nothing more than an authorization—executed at a time when Spaeder and the other signatories to that document still had ownership and control rights in Rhoades LP—of Spaeder to negotiate a settlement of claims on behalf of Rhoads. It contains no indication that Shelbourne's rights to exercise ownership and control over Rhoads LP, upon any default by Rhoads LP on the loan from Shelbourne under the December 22, 2011 Loan and Security Agreement, would be somehow altered.

15

### E. Colorado Abstention

In a last-ditch effort to avoid approval of the Settlement Agreement, Spaeder argues that the Colorado River abstention doctrine should apply to avoid duplicative litigation in the currently-pending parallel proceedings here and in state court. He reasons that "[a]llowing [the state and federal court] matters to proceed on their own pace invites contemporaneous exercise of concurrent jurisdiction, duplicative expenditure of judicial assets, and potentially conflicting results." (Spaeder Supp. Memo, Civ. A. No. 13-4752, ECF No. 255, at p. 10.)

The Colorado River doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). The doctrine is to be narrowly applied in light of the general principle that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996); see also Colorado River, 424 U.S. at 813 ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (internal quotation omitted).

Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." Yang v. Tsui, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (internal quotation and citation omitted). If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2009). Under the threshold question, cases are considered parallel when they involve the same parties

16

and claims. Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997). The presence of additional parties in the state action does not destroy the parallel nature of the cases when all of the parties in the federal action are also parties in the state action. See Albright v. Sears, Roebuck and Co., No. 95-4240, 1995 WL 664742, at *1 (E.D. Pa. Nov. 7, 1995) ("[B]ecause it includes a count against an additional defendant, the state complaint is more embracing."). However, "there must be a likelihood that the state litigation will dispose of all the claims presented in the federal case." Flint v. A.P. Desanno & Sons, 234 F. Supp. 2d 506, 510–11 (E.D. Pa. 2002).

Here, the parties in the pending federal and state court actions are far from parallel. The State Court Action is between Spaeder, along with several other individuals, and Kaplin/ Shelbourne. By contrast, the federal actions before me involve Eckerd Corporation, Parke Bank, and Rhoads LP. Spaeder has not demonstrated any likelihood that the after-filed State Court Action will dispose of all the claims presented in this long-pending federal case. Given the narrow application of Colorado River abstention, together with the federal court's "virtually unflagging obligation" to exercise its jurisdiction to adjudicate a controversy properly before it, I decline to abstain under this doctrine. Matusow v. Trans-Cnty. Title Agency, 545 F.3d 241, 248 (3d Cir. 2008) (quotations omitted).

### III. CONCLUSION

I conclude that George Spaeder does not, either individually or on behalf of Rhoads LP, have standing to object to the proposed settlement in the above-captioned matters. The ownership of Rhoads LP—the entity at the center of the proposed settlement—has been legally transferred to Shelbourne. Although Spaeder has filed a State Court Action challenging the actions of his former counsel and/or partners, he has not presented any legal challenges regarding the transfer of Rhoads LP under the December 2011 Loan and Security Agreement. This

irrefutable fact divests Spaeder of the bases to contest the proposed settlement. As Spaeder is not a party to the Interpleader Action, and as any claims against him in the Kaplin-Spaeder Litigation are not impacted by the proposed Settlement Agreement, I find that Spaeder has no standing on which to oppose the Motion by the Settling Parties for Enforcement of the Settlement Agreement.